## Dickson Unemployment Compensation Case.

Argued April 13, 1965.   Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*R. Charles Thomas*, with him *George X. Simonetta*, for appellant.

*Sydney Reuben*, Assistant Attorney General, with him *Walter E. Alessandroni*, Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WRIGHT, J., June 17, 1965:

Frances B. Dickson was last employed by the Bell Telephone Company in Meadville, Pennsylvania. Her final day of work was July 17, 1964, on which date she had a valid separation. Her application for unemployment compensation was disallowed by the Bureau of Employment Security, the Referee, and the Board of Review on the ground that she did not have sufficient base year earnings to be eligible for benefits under the provisions of Section 404 of the Unemployment Compensation Law. Act of December 5, 1936, P. L. (1937) 2897, 404, 43 P.S. 804. This appeal followed.

Claimant's application was filed on July 20, 1964, which established as her base year period the second, third and fourth quarters of 1963 and the first quarter of 1964.[1] During this period claimant was employed by the Shuko Shoe Company in Meadville, and her wages in covered employment were as follows: second quarter 1963, $915.18; third quarter 1963, $356.86; fourth quarter 1963, none; first quarter 1964, none. Since claimant's highest quarterly wages amounted to $915.18, her potential weekly benefit rate as computed under Section 404(a)(1) was $37.00. The minimum base year wages to qualify claimant for this weekly benefit rate under the table in Section 404(e) is $1,-

---

[1] Base year is defined in Section 4(a) of the statute (43 P.S. 753(a)) as follows: " 'Base Year' means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year".

332.00, whereas claimant's earnings for the four quarters in question totaled only $1,272.04.

Section 404(a)(3) of the statute then provides that, if the base year wages of an employe whose weekly benefit rate has been determined under Section 404-(a)(1) are insufficient to qualify him for his potential weekly benefit rate but are sufficient to qualify him for the next lower rate, his weekly benefit rate shall be redetermined at such next lower rate. The next lower weekly benefit rate is $36.00, and the minimum amount of base year wages under the table in Section 404(e) to qualify for that rate is $1,296.00. It is therefore apparent that claimant was ineligible for benefits under either method of computation. Cf. *Kissell Unemployment Compensation Case*, 192 Pa. Superior Ct. 11, 159 A. 2d 19.

Claimant's contention on this appeal arises out of the receipt by her of a check, in net amount of $46.34, covering vacation pay. Claimant received this check on June 28, 1963, and cashed it the next day. The amount thereof was included by the employer in reporting claimant's earnings for the second quarter of 1963. It is claimant's position that this check "should have been recorded in July since our vacation is in July". As calculated in her brief, this would reduce her highest quarterly wages to $868.84 and make her benefit rate $35.00. The minimum amount of base year wages under the table in Section 404(e) to qualify for that rate is $1,260.00. Thus, if her theory is adopted, claimant would be eligible for benefits.

We are of the opinion that the issue involved must be decided contrary to claimant's contention because of the express language of Section 404(b), which reads as follows (italics supplied): "The 'highest quarterly wages' of an employe shall be the total wages (computed to the nearest dollar) which *were paid* to such employe in that calendar quarter in which such total

wages were highest during the base year". It is clear that the legislature intended that the highest quarterly wage should include wages actually received, even though not yet fully earned.[2] Conversely, the highest quarterly wage does not include wages fully earned but not yet actually received. In *Zubritsky Unemployment Compensation Case*, 202 Pa. Superior Ct. 347, 195 A. 2d 854, we held that wages earned by a claimant in the last quarter of his base year (first quarter of 1962), but not actually paid until the next quarter, could not be included in computing base year wages. The following statement from our opinion in that case is here pertinent: "The $302.23 was received by the appellant and reported by his employer in the second quarter of 1962. Section 404(b) above set forth clearly provides that the highest quarterly wages shall be the wages paid . . . Thus in the present case the appellant's wages in the amount of $302.23, although earned in the payroll period ending March 24, 1962, were not actually paid to him until the regular pay day thereafter, which was April 4, 1962, and which the employer was required to report in the subsequent quarter".

Claimant cites Department Regulation 108 and *Piestrak Unemployment Compensation Case*, 404 Pa. 527, 172 A. 2d 807, which concern the interpretation of the term "unemployed" as defined in Section 4(u) of the statute (43 P.S. 753(u)). Briefly stated, an employe is not eligible for unemployment compensation covering that portion of a plant shutdown for vacation during which he is compensated by the receipt of vacation pay. This presents an entirely different problem. The allocation of vacation pay to determine

---

[2] Vacation pay "is not in the nature of compensation for the calendar days it covers. It is more like a contracted-for bonus for a whole year's work": *Mathewson v. Westinghouse Electric Corp.*, 394 Pa. 518, 147 A. 2d 409.

whether or when a claimant is unemployed does not relate to or control the determination of whether claimant was paid wages during his base year. Cf. *McGuire Unemployment Compensation Case*, 191 Pa. Superior Ct. 113, 155 A. 2d 421.

Decision affirmed.