Wallace T. Claypoole, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Nicholas Roberto, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 3, 1982, before Judges ROGERS, CRAIG and MacPHAIL, sitting as a panel of three.

*Steven R. Sosnov,* with him *Jeanne E. Cook,* for petitioners.

*Charles G. Hasson,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, April 30, 1982:

Wallace T. Claypoole and Nicholas Roberto, the appellants in these unemployment compensation cases, lost their work when their employer permanently ceased operations in July, 1979. Each of them filed for and received benefits for a benefit year beginning in July, 1979. When their first benefit year ran out, each filed another application for extended benefits with an effective date of July 20, 1980.

The base year of the 1980 applications was from April 1, 1979 to March 31, 1980, consisting of the following quarters: (1) April, May, June, 1979, (2) July, August, September, 1979, (3) October, November, December, 1979, and (4) January, February, March, 1980. This is because "base year" is defined in Section 4(a)

of the Unemployment Compensation Law, 43 P.S. §753 (a), as the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year.[1]

Section 401(a), 43 P.S. §801(a) provides that compensation shall be payable to any employee, who during the base year has been "paid wages . . . Provided, however, That not less than twenty per centum (20%) of the employe's total base year wages have been paid in one or more quarters, other than the highest quarter in such employe's base year."

In June, 1979, during the first quarter of the base year for their July, 1980 applications, the appellants were paid, respectively, Claypoole $5605 and Roberto $6044. In July, 1979, during the second quarter of their base years, they were paid respectively, Claypoole $994 and Roberto $1133. These were their total base year wages. The compensation authorities held them both to be financially ineligible because less than 20% of their total base year wages were paid them in any quarter other than their highest quarter.[2] The compensation authorities obviously decided these cases in accordance with the Act.

The appellants contend that they should have been held to be financially eligible because some of the money paid them in June, 1979 was vacation pay which should be allocated to the quarter, July, August, September, 1979, bringing the amount paid them in that

---

[1] The benefit year is the fifty-two consecutive calendar weeks beginning with the day an application is filed. Section 4(b), 43 P.S. §753(b).

[2] The word "wages" used in Section 401(a), *supra*, requiring for eligibility that "not less than [20%] of the employe's total base wages" be paid in a quarter other than the highest quarter is defined at Section 4x, 43 P.S. §753(x) as "all remuneration . . . paid . . . to an individual with respect to his employment. . . ." and of course includes vacation pay, the subject of this case.

quarter above the 20% standard. The authority they offer for this thesis is a line of cases holding that vacation pay must be allocated to vacation periods for purposes of making the deduction from unemployment compensation due in any week for remuneration, including vacation pay, paid or payable with respect to such week, required by Section 404(d), 43 P.S. §804(d). The progenitor of this line of cases is *Piestrak Unemployment Compensation Case,* 404 Pa. 527, 172 A.2d 807 (1961) and the first of the line in this court seems to be *Thomas v. Unemployment Compensation Board of Review,* 11 Pa. Commonwealth Ct. 431, 314 A.2d 594 (1974). These cases hold that "the receipt of vacation pay is to be allocated to an actual vacation period" for the purpose of the deduction of vacation pay from compensation required by *Section 404(d). Piestrak,* 404 Pa. at 536, 172 A.2d at 812.

We are concerned here, however, not with the Section 404(d) deduction of vacation pay from compensation, but with basic financial eligibility for compensation founded on qualifying base year earnings as defined by Section 401(a). On the latter point, the only authority is dead against the appellants. In *Dickson Unemployment Case,* 205 Pa. Superior Ct. 468, 471-72, 211 A.2d 51, 53 (1965), the court wrote:

> Claimant cites Department Regulation 108 and Piestrak Unemployment Compensation Case, 404 Pa. 527, 172 A.2d 807, which concern the interpretation of the term 'unemployed' as defined in Section 4(u) of the statute (43 P.S. 753(u)). Briefly stated, an employe is not eligible for unemployment compensation covering that portion of a plant shutdown for vacation during which he is compensated by the receipt of vacation pay. This presents an entirely different problem. The allocation of vacation pay to determine whether or when a claim-

ant is unemployed does not relate to or control the determination of whether claimant was paid wages during his base year. Cf. McGuire Unemployment Compensation Case, 191 Pa. Superior Ct. 113, 155 A.2d 421.

Aside from the authority just cited, we would in this case be hard put to allocate that portion of the payment to the appellants made to them in June, 1979 to some later time because the employer's plant was permanently closed in July, 1979 and the appellants' testimony was to the effect that the employer's past practice was to remit vacation pay in July on account of the vacation shutdown customarily occurring in August. Clearly, there was no "actual vacation period" in August, 1979 to which the appellants' vacation pay could be allocated.

Order affirmed.

### ORDER

AND Now, this 30th day of April, 1982, the order of the Unemployment Compensation Board of Review is affirmed.

This decision was reached prior to the resignation of Judge MENCER.